**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

UNITED STATES OF AMERICA,

v.  Case No. 5:24-cr-46-TPB-PRL

TIMOTHY LEE KING,

    Defendant.
_____/

**ORDER GRANTING IN PART "DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND REQUEST FOR EVIDENTIARY HEARING"**

This matter is before the Court on "Defendant's Motion to Suppress Evidence and Request for Evidentiary Hearing," filed by counsel on August 14, 2024. (Doc. 24). On August 27, 2024, the United States of America filed a response in opposition to the motion. (Doc. 29). On September 13, 2024, the Court held a hearing to address this matter. (Doc. 37). After reviewing the motion, response, testimony, evidence, legal arguments, court file, and the record, the Court finds as follows:

**Factual Background**

The facts are largely undisputed and captured on video from law enforcement body-worn cameras. On January 16, 2024, at around 1:15 pm, Defendant got out of a car in Leesburg, Florida. The day was overcast, windy, and – by Florida's standards – a crisp and chilly 67 degrees. Defendant pulled up a neck gaiter to partially cover his face and zipped up his jacket.[1]

---

[1] A neck gaiter is "a fabric covering in the form of a closed loop worn around the neck that can extend to cover the lower part of the face." *See* "Neck gaiter," *Merriam-Webster.com*

Law enforcement officers were in the area conducting surveillance to locate a suspect known as "A.D.J.," who had an active Lake County warrant for sexual battery. The officers had prior interactions with A.D.J. in this area. The bench warrant and "be on the lookout" ("BOLO") bulletin described A.D.J. as a 33-year-old black man with an unknown address. His height was listed as 5'7" and his weight as 150 pounds.

While in the area, the officers observed Defendant across the street. Defendant was a 31-year-old black man who is 6'01" and weighed 190 pounds. One of the officers searching for A.D.J. believed from his viewpoint across the street that Defendant matched that description. This officer notified the other officers that Defendant could be the suspect they were trying to locate.

When Defendant emerged from his vehicle and began walking away, officers approached him and ordered him to stop. Defendant inquired as to why he was being detained, and the officers told Defendant they believed he was engaged in illegal activity because he pulled his gaiter up and zipped up his jacket. Defendant pulled down his mask and the officers recognized that he was not A.D.J. Defendant also unzipped his jacket and showed a bag across his chest. The officers began asking Defendant what was in the bag, but Defendant deflected their questions and kept asking why he was being stopped. He also asked the officers to contact their sergeant. Officers asked Defendant if he had any contraband on his person or in his bag, and he said he did not.

---

*Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/neck%20gaiter (last visited December 16, 2024).

The officers continued to ask questions, and Defendant continued to inquire about contacting the sergeant. After an officer again asked what was in the bag, Defendant began to remove items, including a condom and a cigar. While Defendant removed these items, another officer observed a digital scale in the bag. The officers laughed at Defendant for revealing the digital scale before executing a take-down. During the take-down, Defendant had a seizure, which required emergency medical services. When the officers ultimately apprehended Defendant, they found a loaded North America Arms 22 Magnum revolver with a collapsible stock inside the pocket of Defendant's hoodie. Officers also found 1.5 grams of a white powdery substance that tested positive for cocaine, 5 small pills that tested positive for MDMA, and two glass pipes with burnt residue of narcotics.

Based on his criminal history, Defendant has been charged with one count of possession of a firearm and ammunition affecting interstate commerce by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). In his motion, Defendant challenges the legality of the *Terry* stop, arguing that the officers did not possess a reasonable suspicion that he was involved in criminal activity. Defendant contends that because the *Terry* stop was illegal, all evidence derived from the stop must be suppressed.

## **Legal Standard**

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266,

273 (2002). As one exception to the warrant requirement, law enforcement officers can stop and briefly detain a person for investigative purposes "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Although reasonable suspicion demands "considerably less" than probable cause, "the police are required to articulate some minimal, objective justification for the stop." *United States v. Mikell*, 102 F.3d 470, 475 (11th Cir. 1996). This determination is based on information available to the officer at the time of the stop. *See Arvizu*, 534 U.S. at 273. When considering whether an officer possessed reasonable suspicion, the court must examine the totality of the circumstances, which is an inquiry that "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (quoting *Arvizu*, 534 U.S. at 273).

## Analysis

A law enforcement officer may briefly detain an individual for the purpose of investigating a crime if the officer has "a reasonable, articulable suspicion based on objective facts that the individual has engaged in, or is about to engage in, criminal activity." *United States v. Cherry*, No. 1:18-cr-503-SCJ-JFK, 2019 WL 8757214, at *3 (N.D. Ga. Dec. 26, 2019) (citing *Terry*, 392 U.S. at 20-22; *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007)). The Eleventh Circuit generally

applies four non-exclusive factors when considering the line between a *Terry* stop and an arrest: "the law enforcement purposes served by the detention, the diligence with which the police pursue the investigation, the scope and intrusiveness of the investigation, and the duration of the detention." *United States v. Acosta*, 363 F.3d 1141, 1146 (11th Cir. 2004) (quoting *United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000)). When it comes to a BOLO, the Eleventh Circuit has noted that "if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information." *United States v. Akinlade*, 519 F. App'x 529, 533-34 (11th Cir. 2013) (quoting *United States v. Hensley*, 105 S. Ct. 675, 682 (1985)).

Here, officers had an articulable, reasonable suspicion that the wanted person in the BOLO had committed a crime, and they were investigating to determine whether Defendant was that individual based on his description. Just because the BOLO did not exactly match Defendant's description does not mean that reasonable suspicion to support the initial investigation did not exist – exact descriptions are not required for a finding of reasonable suspicion. *See Cherry*, 2019 WL 8757214, at *6 (citing *United States v. Romo-De La Rosa*, No. SA-10-CR-20-XR, 2010 WL 4595814, at *2-3 (W.D. Tex. Nov. 2, 2010)). The police diligently pursued their investigation upon observing Defendant, and the scope was quite limited at the outset. Consequently, the Court concludes that the initial *Terry* stop – to

confirm or dispel suspicions of whether Defendant was the person identified in the BOLO – was valid.

But Defendant also contends that even if the initial stop was a valid *Terry* stop, it evolved into an arrest without probable cause. Under *Terry*, "an officer's actions during a traffic stop must be 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (quoting *Terry*, 392 U.S. at 20). Moreover, "the duration of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop." *Id.* (citing *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999)). After all, "[t]here is a difference between an investigative stop of limited duration for which reasonable suspicion is enough, and a detention that amounts to an arrest for which probable cause is required." *Acosta*, 363 F.3d at 1145-46.

Defendant argues that once officers realized that Defendant was not A.D.J. (the suspect identified in the BOLO) but continued to detain him, the *Terry* stop matured into an arrest without probable cause. The Court is inclined to agree. Officers testified, and the bodycam footage confirms, that when the officers approached Defendant and were able to view him from a closer position and without the gaiter covering Defendant's face, the officers very quickly realized that Defendant was not A.D.J. Once the officers had dispelled their suspicions concerning the BOLO, the BOLO could not serve as a basis to continue the detention. And yet, the officers did not end things there. Rather, they continued to

surround Defendant and question him about why he was walking around with a gaiter and what was in his bag. They did so without articulable reasonable suspicion of criminal activity. Furthermore, a reasonable person in Defendant's position would not have felt free to leave.

The Government argues that even if the officers did not lawfully stop Defendant to dispel suspicion that he was the suspect of the BOLO and arrest warrant, or exceeded the scope of that investigation, the officers lawfully stopped Defendant to investigate a mask violation. *See* § 876.12, *F.S.*; *see also* § 876.155, *F.S.* (limiting application of mask statute). It is unclear whether this mask statute is constitutional or enforceable. *See Robinson v. State*, 393 So. 2d 1076, 1076-77 (Fla. 1980); *Nicol v. State*, 939 So. 2d 231, 233 n.2 (Fla. 5th DCA 2006). But even assuming that the statute is constitutional and enforceable, or the officers reasonably believed it to be so, it does not appear that wearing a gaiter on a chilly day would support a mask violation here, so there would not be reasonable suspicion to continue the detention of Defendant on this basis. *See* § 876.155, *F.S.* Similarly, the fact that Defendant declined to answer questions would not furnish the officers with the objective justification needed for continued detention because "[a] refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *See Illinois v. Wardlow*, 528 U.S. 119, 125 (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)).

Although the initial stop of Defendant to investigate the BOLO was valid, once the officers dispelled their suspicion that Defendant was the person identified

in the BOLO, a reasonable suspicion of other criminal activity, or perhaps some articulable threat to officer safety, would be needed to support continued detention and investigation. The officers did not provide any such reasonable suspicion, and based on the totality of the circumstances, as evidenced on the video, it does not appear they could do so. Consequently, "Defendant's Motion to Suppress Evidence and Request for Evidentiary Hearing" is hereby **GRANTED**.

    **DONE** and **ORDERED** in Chambers, in Ocala, Florida this <u>3rd</u> day of January, 2025.

 

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE